AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
OCT 2 5 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>LG Cellular Telephone<br>Serial No. 706CYPY2001432 | )<br>)<br>)  Case No. **17MJ3988**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Alien Smuggling |

The application is based on these facts:
See Affidavit of Border Patrol Agent Ken Rodriguez, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ken D. Rodriguez, U.S. Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/25/17

*Judge's signature*

City and state: San Diego, CA        HON. WILLIAM V. GALLO, Magistrate Judge
                                     *Printed name and title*

FILED

OCT 2 5 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1)  LG Cellular Telephone<br>        Serial Number: 706CYPY2001432 | Case No.:  **17MJ3988**<br><br>AFFIDAVIT OF:<br>U.S. BORDER PATROL AGENT<br>KEN D. RODRIGUEZ<br>IN SUPPORT OF SEARCH WARRANT |

## AFFIDAVIT

I, Ken D. Rodriguez, a United States Border Patrol Agent with the United States Border Patrol ("USBP"), Customs and Border Protection, Department of Homeland Security, having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of an alien smuggling investigation conducted by USBP agents for the following target property: one (1) LG Cellular cellphone (hereinafter referred to as Target Telephone) bearing serial number 706CYPY2001432 was seized from John Leland COMBS (hereinafter referred to as "Defendant" or "COMBS") on September 02, 2017.

2. The Target Telephone was seized from COMBS following his arrest for assault on a United States Border Patrol Agent (BPA) and fleeing from USBP after failing to yield at the SR-94 Border Patrol checkpoint in Jamul, California.

3. It is believed by investigating agents that COMBS was in the area attempting to Title 8, United States Code, Section 1324, transportation of illegal aliens, within the Southern District of California. Investigating agents believe probable cause exists to believe that the Target Telephone contains evidence relating to violations of Title 8, United States Code, Section 1324, transportation of illegal aliens. The Target Telephone is currently in the possession of the Department of Homeland Security, United States Border Patrol, Brown Field Station, Highway 94 Checkpoint, 15430 Campo Road Jamul,

California 91935 (Evidence Vault). Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the Target Telephone and to seize, as they pertain to violations of Title 8, United States Code, Section 1324, all communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

    b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling illegal aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States;

    d. tending to identify travel to or presence at locations involved in smuggling undocumented aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

Given those facts, I respectfully request permission to search the Target Telephone for data relating to the specified charges for which the defendant is currently in custody and the crimes pertaining to Title 8, United States Code, Section 1324 for which he believed to have in the area on September 2, 2017.

## **EXPERIENCE AND TRAINING**

4. I have been a Border Patrol Agent (BPA) with the United States Border Patrol ("USBP") since November 28, 2008. I am a graduate of the USBP Training Academy in Artesia, New Mexico. As a result of my training and experience as a BPA, I am familiar with federal criminal and immigration laws. My primary duties have been the enforcement of federal immigration laws. As part of this training, I attended criminal investigation training that included course studies in, among other things, criminal law, constitutional law, search and seizures, and courtroom procedure.

5. As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As an Agent with the Border Patrol, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

6. Since 2016, as an agent with the Brown Field Border Patrol Station Targeted Enforcement Unit ("TEU"), my assignment has included investigations related to illegal aliens and alien smuggling. In the course of my duties, I have worked as the case agent, directing specific alien smuggling and illegal entry investigations. I have also worked as a field agent at the Brown Field Border Patrol Station in San Diego, California.

7. During my assignment, I have observed and recorded many movements of individuals illegally entering the United States and of those suspected of smuggling illegal aliens into the United States. I have interviewed defendants, and witnesses relative to their illegal entry and alien smuggling. I have been called upon to conduct these interviews.

Through my observations and these interviews, I have gained a working knowledge and insight into the operational habits of illegal aliens and alien smugglers, with particular emphasis on those who attempt to illegally enter or smuggle illegal aliens into the United States from Mexico.

8. Through the course of my career, through training, investigations, and conversations with other law enforcement personnel, I have become aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving alien smuggling. Typically, load drivers smuggling humans across the border, or to the interior from the border, are in telephonic contact with co-conspirators immediately prior to, during and following the smuggling event. These communications typically consist of instructions on how/where to cross or pick up undocumented aliens, directions of travel, and locations for delivery to stash houses and/or sponsors. Alien smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the origination and destination phone numbers of calls placed to and from cellular and digital telephones.

9. Through the course of my career, I have arrested and interviewed numerous alien smugglers. Through these experiences, I have become familiar with the activities of those who coordinate smuggling events and the practices used for the drivers/smugglers they employ locally and abroad, including transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

11. Based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the aliens while they are in transit.

   c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the aliens will arrive at predetermined locations.

   d. Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of the aliens.

   e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

   f. Alien smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport the aliens.

## FACTS SUPPORTING PROBABLE CAUSE

12. On September 2, 2017, BPA Norberto M. Ribac was assigned to the Brown Field Border Patrol Station All-Terrain Vehicle (ATV) Unit patrolling in the area of Tecate, California. BPA Ribac was in full USBP rough duty uniform bearing an embroidered badge on the left breast and embroidered agency patches on both shoulders.

13. At approximately 5:40 AM, in the performance of his duties, BPA Ribac discovered footprints in the dirt traveling in a generally northern direction from the international border fence approximately 300 yards west of the Tecate Port of Entry in Tecate, California. BPAs routinely inspect the ground areas in this specific area to detect

5

footprints indicating persons to have illegally entered the United States. The area BPA Ribac discovered these footprints is referred to as "West POE" by agents who routinely patrol this area as this is a common crossing area for illegal aliens to make their entry.

14. BPA Ribac followed the footprints north to Industrial Road where he discovered a silver four door Hyundai Genesis, bearing California license plate number 7GSU071, parked with the engine still running. Next to the Hyundai Genesis stood a single white male speaking on a cellular phone. The individual, later identified as John Leland COMBS, was wearing shorts, a T-shirt and had multiple tattoos. BPA Jorge Artiles then arrived to assist BPA Ribac. The road where COMBS was encountered is a dirt road in a rural area of East County, San Diego located approximately 200 yards north of the international boundary fence between the United States and Mexico and approximately 220 yards west of the Tecate Port of Entry. It should also be noted, the vehicle, a Hyundai Genesis, is not considered an off-road style of vehicle.

15. This area is commonly used by alien smugglers as it provides easy egress for drivers to enter and pick up illegal aliens immediately after crossing the international boundary. This area also provides smugglers with quick access to the main road leading north from the Tecate Port of Entry, State Route 188, which will then take them to State Route 94. State Route 94 then provides these drivers with multiple egress routes to the Interstate 8 freeway.

16. BPA Ribac approached COMBS and after a brief interview he asked COMBS if there was anything or anybody in the vehicle with him (COMBS). COMBS stated he was alone and voluntarily opened the trunk of the vehicle for BPA Ribac to inspect. While looking in the trunk of the vehicle, BPA Ribac noticed two backpacks in plain view, which COMBS stated belonged to him.

17. At approximately 6:01 AM, BPA Ribac attempted to contact dispatch using his service radio to request registration and records checks on the Hyundai Genesis when he noticed COMBS walking towards the vehicle's driver side door. COMBS proceeded to enter the vehicle, close the door, and shift the vehicle into drive in an attempt to leave the

1 area without being released by agents at the scene conducting their investigation. BPA
2 Ribac reached into the vehicle through the driver's side window in an attempt to turn the
3 engine off and pull out the keys. COMBS then started to drive the Hyundai Genesis with
4 BPA Ribac's upper body still inside the vehicle. While BPA Ribac was attempting to free
5 himself from the moving vehicle driven by COMBS he was struck by the vehicle on his
6 right elbow and on the right side of his head breaking the visor of his ATV helmet. BPA
7 Ribac, using his service issued radio, relayed a brief description of the events that had just
8 taken place as well as the description and direction of the vehicle, a Silver 4 door Hyundai
9 Genesis the was last seen traveling northbound on State Route 188. BPA Ribac also
10 relayed the description of the driver as "a single white occupant with tattoos all over".

11     18. At approximately 6:03 AM, Supervisory Border Patrol Agent (SBPA)
12 Timothy Cicirelli, while driving a fully marked USBP vehicle attempted a vehicle stop of
13 the Hyundai Genesis being driven by COMBS. The Genesis failed to yield to SBPA
14 Cicirelli while traveling westbound on State Route 94. Upon their approach toward the
15 State Route 94 Border Patrol Checkpoint in Jamul, California, SPBA Cicirelli advised
16 agents at the Checkpoint to deploy a Vehicle Immobilization Device (VID) across all lanes
17 of State Route 94 and to stop all eastbound traffic. As the vehicle, the silver Hyundai
18 Genesis, approached the cone pattern leading into the primary inspection lane of the
19 checkpoint, the vehicle swerved into the eastbound lane into oncoming traffic and
20 continued west in the east bound lanes against the delineated traffic pattern, in an attempt
21 to bypass the State Route 94 checkpoint. SBPA Cicirelli observed the vehicle drive over
22 the VID and continue traveling westbound.

23     19. The silver Hyundai Genesis, driven by COMBS, eventually came to a
24 complete stop on a grassy hill near Daley Ranch Truck trail off State Route 94. SBPA
25 Cicirelli observed an individual, later identified as John Leland COMBS, wearing a blue t-
26 shirt and shorts immediately exit the driver's seat of the vehicle and jump over a chain link
27 fence. BPA Abel Meza, pursued COMBS on foot for approximately three hundred yards
28 with SBPA Cicirelli into an open field when COMBS stopped with his hands raised in the

air. At approximately 6:14 AM, BPA Meza approached COMBS and placed him under arrest. This location is approximately 8.7 miles north of the border and 11.2 west of the Tecate, California port of entry.

20. During COMBS' booking, investigating agents discovered COMBS listed his home address as 11545 Manzanita Road in Lakeside, California. This location is approximately 28 air miles from the Tecate Port of Entry where COMBS was initially contacted by BPA Ribac in the silver Hyundai Genesis. Neither COMBS nor the Hyundai Genesis registered a crossing through the Tecate, Port of Entry on the day COMBS was arrested. COMBS' tattoos were documented and it was discovered during processing that COMBS is a member of the Peckerwoods criminal street gang. The Peckerwoods are a reputed white supremacist street gang with associations to the San Diego Skinheads who in turn are affiliated with the Aryan Brotherhood.

21. Shortly after COMBS' arrest, at approximately 6:30 AM, BPA's Jorge Artiles, Robert Reyes, and Ribac were approached by Jonathan Elijah PASCO on Industrial Road near the area COMBS had just absconded. PASCO approached BPA Ribac in a black over silver PT Cruiser, bearing California license plate number 6AHZ359, looking for a friend that had broken down in the area. PASCO stated to BPA Ribac that his friend was a white male with tattoos and driving a "silver car similar to an Acura".

22. Agents observed PASCO's tattoos on both arms, including a large swastika located on the back of his shaved head, and the word "Fearless" tattooed above his left eye. Given the events that had just transpired and the location, PASCO was placed into an investigative detention to determine his motives for being in the area. PASCO stated he was in the area earlier with COMBS to pick up two friends that needed a ride to work for his father's construction company. Agents conducted records checks regarding the PT Cruiser driven by PASCO. Agents discovered the PT Cruiser had in fact crossed traveling westbound through the State Route 94 checkpoint located in Jamul, California at approximately 5:00 a.m. in the morning with two other occupants. It should be noted, Agents discovered the Tecate Port of Entry operating hours are Monday through Sunday

from 5AM to 11PM, and that it takes approximately 20 minutes to drive from the Tecate Port of Entry to the State Route 94 Checkpoint.

23. Records checks conducted on PASCO revealed PASCO to be a self-admitted member of the San Diego Skin Heads street gang. It was also later discovered PASCO to be living at 633 Grape Street in El Cajon, California. This address is approximately 24 air miles north of the Tecate Port of Entry where PASCO was encountered by BPA's Jorge Artiles, Robert Reyes, and Ribac.

24. Also in early September, another individual known herein as "CS 1[1]" was arrested very near the United States/Mexico international border with two undocumented female Chinese nationals sitting in the rear seat. Another undocumented male Chinese national was arrested nearby and stated that he was heading to the same vehicle driven by CS 1. Prosecution was declined and CS 1 was administratively processed. He stated that a member of the San Diego Skin Heads street gang, eventually identified as PASCO, had recruited him to smuggle aliens.

25. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this Affidavit, I believe that information relevant to the alien smuggling activities of COMBS and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## METHODOLOGY

26. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

---

[1] CS 1 has a somewhat lengthy criminal record, with convictions related to controlled substances, firearms, theft, vandalism, and gang activity.

9

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

29. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that COMBS used the Target Telephone to facilitate the

10

offense of alien smuggling and to communicate with co-conspirators. The Target Telephone was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Section 1324.

30. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by COMBS continues to exist on the Target Telephone.

31. Based upon my experience and training, consultation with other agents in alien smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth above in Attachment B are likely to be found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, an Agent with the USBP, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A (Target Telephone) and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Ken D. Rodriguez
U.S. Border Patrol Agent

Subscribed and sworn to before me this ___ day of October, 2017.

_____
HON. WILLIAM V. GALLO
United States Magistrate Judge

11

ATTACHMENT A

PROPERTY TO BE SEARCHED:

One White LG Cellular Telephone
Serial Number: 706CYPY2001432

Which is currently in the possession of the Customs and Border Protection Brown Field Border Patrol Station, 15430 Campo Road, Jamul, CA 91935.

ATTACHMENT B

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of August 2, 2017 up to and including September 2, 2017:

    1.    Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a.    tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

    b.    tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers-that may contain electronic evidence tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of aliens into the United States from Mexico or transporting illegal aliens within the United States such as drop off and pick up locations, stash houses, load houses, or delivery points;

ATTACHMENT B

    e.    tending to indicate payment for the smuggling of aliens into the United States or the transportation of aliens with in the United States;

    f.    tending to identify the user of, or persons with control over or access to, the Target Telephone; or

    g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, record, or data above.

**Which are evidence of violations of 8 U.S.C. § 1324.**